SCHIMMEL et al. v. MEYER.　(No. 7342.)

(Court of Civil Appeals of Texas. San Antonio. April 15, 1925. Rehearing Denied May 13, 1925.)

**1. Principal and agent ⬅119(7)—Presumed power to compromise claim against another carried with it authority to settle on whatever basis was necessarily incident to exercise of power conferred.**

It will be presumed that power to compromise claim against another carried with it authority to settle on whatever basis was necessarily incident to exercise of power conferred.

**2. Principal and agent ⬅175(1)—Principal, ratifying acts of agent, is estopped to deny agent's authority to do such acts.**

Principal, ratifying acts of agent, is estopped to deny agent's authority to do such acts.

**3. Appeal and error ⬅1003—Finding, which is contrary to overwhelming preponderance of evidence, will be set aside.**

Finding, which is contrary to overwhelming preponderance of evidence, will be set aside.

**4. Compromise and settlement ⬅23(3)—Finding as to consideration for plaintiff's compromise settlement with defendant held without sufficient evidentiary support.**

Jury's finding that consideration for plaintiff's compromise settlement with defendant was latter's oral promise to secure shares of stock in another company for plaintiff *held* without sufficient evidentiary support to uphold it.

**5. Trial ⬅139(1)—Refusal to direct verdict for defendants held error.**

Refusal to direct verdict for defendants *held* error,·where the evidence adduced supported their theory, and did not support plaintiff's theory.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by Henry G. Meyer against V. G. Schimmel and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded for new trial.

Ross, Ross & Alexander, of Fort Worth, for appellants.

Burns, Christian, Gumm & Gordon, of Fort Worth, for appellee.

SMITH, J. This suit was brought by Henry G. Meyer, a resident of Dayton, Ohio, against the Associated Oil Syndicate and others, residents of Fort Worth, Tex. The Oil Syndicate was designated as a "trust estate," but was not otherwise defined or described in the pleadings or evidence. The cause was submitted to a jury on special issues, which were resolved in favor of Meyer, for whom judgment was rendered against all the defendants, jointly and severally. The appeal raises a number of, interesting and difficult questions which have been very thoroughly and ably presented by both parties in briefs which cover 241 typewritten pages.

It appears from the record that in September, 1921, Meyer was induced by the fraud of one of the agents of the oil syndicate to purchase 2,600 shares in said syndicate, in which he had previously purchased and still owned 400 shares. For the 2,600 shares, Meyer exchanged 8 United States Liberty bonds of the value of $800, and 32 shares of stock in the Mead Pulp & Paper Company, of the value of $3,040; the entire, consideration aggregating $3,840. It seems that Meyer made the exchange upon the representation of the syndicate agent that the stock in the latter was worth 4 times the price exacted therefor in the exchange ($1.50 per share), and could be immediately resold for 4. times that price.

In February, 1923, Meyer effected a compromise and settlement with the syndicate of his claim against the latter for damages sustained by him on account of the deceit practiced upon him in the exchange of securities, and through his agent released the syndicate from all liability upon the original transaction. This compromise was effected by 'Webb T. Eby, acting for Meyer, and V. G. Schimmel, acting for the syndicate. The apparent consideration for the settlement and release was the issuance to Meyer of 1,520 additional shares of stock in the syndicate, which Meyer received and retained up to the time of the trial of this suit.

Meyer brought this action upon the original transaction, without reference to the settlement and release, which the syndicate pleaded in bar of the suit, and which Meyer sought to avoid by alleging that it, too, was obtained from him by the fraudulent and unperformed promise of Schimmel, the syndicate's agent, that the latter would obtain and deliver to Meyer 32 shares of the capital stock of the Pulp & Paper Company. The syndicate denied the charge of fraud, and upon these issues the case was made. Meyer alleged the value of the Pulp & Paper Company stock and the Liberty bonds to have been $3,840 at the time of the original transaction; that the syndicate stock was worthless, and prayed for judgment for the amount stated, with interest.

Upon the trial, the jury found that the settlement was effected upon Schimmel's promise to obtain the Pulp & Paper Company stock for Meyer; that this promise was "false"; and that the value of the syndicate stock at the time of the exchange, was 40 cents a share. The defendants having agreed that the Pulp & Paper Company stock was of the value alleged by Meyer, the court rendered judgment in his favor for the difference between the amounts thus ascertained, and the defendants brought this appeal.

We have concluded that the disposition of the appeal hinges upon issues of fact rather than of law. Those issues may be reduced to two: first, whether or not Eby had authority to execute the release relied on as a defense by appellants; and second, whether or not Eby was induced to settle Meyer's claim against appellants by a promise on the part of Schimmel to obtain the Pulp & Paper Company stock for Meyer.

[1, 2] It is quite clear, with reference to the first issue, that Eby was fully empowered, expressly, as well as impliedly, to make the settlement and to execute the release as evidence thereof. He was sent to Fort Worth by Meyer, for the admitted purpose of compromising the latter's claim against the syndicate for the fraud it had committed upon Meyer, and it will be presumed that, being vested with the power to settle, he had Meyer's authority to do whatever was necessarily incident to the exercise of that power, including the authority to release the syndicate according to the terms of the settlement agreed upon. In the ensuing correspondence by and between the parties, he was expressly given such authority, and moreover his acts in the premises were ratified by Meyer, who was accordingly estopped to deny such authority.

[3, 4] With reference to the second issue of fact, as to whether or not Schimmel, for the syndicate, orally agreed to obtain for Meyer 32 shares of Pulp & Paper Company stock in settlement of the original controversy, we are equally clear that the finding of the jury affirming that issue is without sufficient evidence to support it, or at least is so contrary to the overwhelming preponderance of the evidence as to require that the finding be set aside. Pretermitting a discussion or decision of the question of whether or not parol evidence of the alleged agreement will be permitted to contradict and defeat the express terms of the written release, we will discuss the evidence upon that issue. It is undisputed that upon his own initiative, in pursuance of Meyer's instructions, Eby went to the office of the syndicate and entered into negotiations with Schimmel for the purpose of effecting a compromise of Meyer's claim of fraud against the syndicate. It is also undisputed that he stated to Schimmel that the syndicate shares were quoted on that market at from 85 cents to $1 each, and that Schimmel made no representations to Eby as to the market or other value of this stock. The two then reached a basis of settlement agreeable to both. Eby testified that Schimmel agreed to obtain 32 shares of Pulp & Paper Company stock and turn it over to Meyer in consideration of the settlement and release from the latter. His testimony is somewhat scattering and indefinite about what occurred in the negotiations. On the other hand, the direct and positive testimony of Schimmel and a stenographer in his office was that the compromise was reached and the release executed in consideration of Schimmel's agreement to issue to Meyer 1,520 additional shares in the syndicate, and, as a matter of accommodation to Eby and Meyer, to forward Meyer's certificates of syndicate stock to a firm of brokers in Chicago to be sold and the proceeds applied towards the purchase of 32 shares of Pulp & Paper stock for Meyer; that Schimmel agreed to forward this stock as a favor to Meyer, for the reason that he was in touch with Chicago brokers, and had had much dealing with them, while Eby and Meyer had no acquaintance among such brokers. If there had been no writing done by the parties in these negotiations, then the finding of the jury in favor of Meyer might have to be sustained in view of the conflict in the oral testimony. But Meyer, Eby, and Schimmel engaged in considerable correspondence during and subsequent to the making of the agreement. Eby, in Meyer's behalf, executed a written release, and Schimmel, a receipt, in behalf of the oil syndicate. In these instruments the consideration for the settlement was affirmatively stated in various ways to be the issuance to Meyer of 1,500 additional units in the oil syndicate. On the other hand, the language of these instruments in unmistakable terms and effect negatived the theory that Meyer's claim against the syndicate was settled by Schimmel's agreeing to purchase the Paper & Pulp stock for Meyer. The letters and telegram, the release and receipt, passing between the parties, are clear and comprehensive, were deliberately and frankly made and expressed, and are deemed conclusive of the facts they unmistakably disclose. These facts irrefragably sustain appellants' contention on the one hand, and with almost equal clearness affirmatively refute appellee's claim.

The judgment in favor of appellee was and could have been based alone upon the theory that appellants obligated themselves to obtain the Pulp & Paper stock and deliver it to Meyer in settlement of the latter's claim of the syndicate's fraud in the original transaction, and that the consideration for such settlement was not, as appellants contend, the issuance of additional syndicate units to Meyer.

[5] As the evidence failed to support appellee's theory, and did support appellants', the trial court erred in refusing to direct a verdict for the latter, in response to their request. We therefore sustain appellants' third proposition of law, in which this question is presented, and must reverse the judgment. This conclusion renders all other propositions immaterial in the appeal, and on that ground those propositions will be overruled.

The judgment will be reversed, and the cause remanded for another trial.