## AMERICAN INDEMNITY CO. v. HIGGEN-BOTHAM.

### No. 7719.

Court of Civil Appeals of Texas. Austin.
July 6, 1932.

Rehearing Denied July 30, 1932.

A. B. Coffee, Jr., of Austin, for appellant.

Jim Evetts and W. S. Shipp, both of Belton, and Byron Skelton, of Temple, for appellee.

McCLENDON, C. J.

Higgenbotham sued the indemnity company upon a policy insuring against loss of an automobile by theft. From a judgment upon a special issue verdict in favor of the former, the latter has appealed.

Higgenbotham was in the auto livery business. The car was rented to two boys "to ride into the country," and "they didn't return it."

The controlling questions in the case are whether the loss sustained falls within the risks covered by the terms of the policy; and, if not, whether verbal negotiations between Higgenbotham and Ray (local agent of the indemnity company who wrote the policy) legally effected such coverage.

The policy contained the following pertinent provisions:

The insurance was against: "Loss from such of the Perils, and from only such of the Perils, as are described and Limited in the Schedule of Perils, etc." that involved reading: "Theft, Robbery and pilferage * * * excepting loss suffered by the assured from voluntary parting with title and/or possession, whether or not induced so to do by any fraudulent scheme, trick, device or false pretense or otherwise. * * *"

"This policy does not insure against the wrongful conversion, embezzlement or secretion by a mortgagor, vendee, lessee or other person in lawful possession of the insured property under a mortgage, conditional sale, lease or other contract or agreement, whether written or verbal."

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage. * * * Limitation of Use (c) While the automobile described herein is used as a public or livery conveyance for carrying passengers for compensation; or while rented under contract or leased."

Attached to the policy was a rider reading: "For and in consideration of two dollars ($2.00) per hundred additional premium, permission is hereby given to operate the automobile insured hereunder as Public Rent Automobile."

The use to which the car would be put as stated in the policy was "Service Car (Private or Commercial)."

To constitute theft under our statutes the acquisition of possession must be (1) without consent of the owner or "some person holding the same for him," and (2) with intent to deprive the owner of the value of the article taken. Penal Code, art. 1410. "The taking must be wrongful." However, if possession be obtained by false pretext, or with intent to deprive the owner of the value of the property, followed by actual appropriation by the taker, the offense is theft, even though the taking were "originally lawful." Id. art. 1413. There are also a number of statutory offenses, more or less allied to theft, such as conversion by bailee or mortgagor, embezzlement, etc. The language of the quoted policy provisions clear-

ly, we think, limits the peril insured against to that form. of theft in which possession is obtained without the consent of the owner or the person holding for him, regardless of the method by which such consent is obtained or of the intention of the taker. It expressly excludes any other form of theft and all other analogous offenses. We do not see how this purpose could be more clearly expressed than in the quoted provisions. In this view we are supported by the El Paso court in the recent case of Stuart M. Co. v. General E. I. Corp., 43 S.W.(2d) 647.

■ The rider manifestly had reference to the "Limitation of Use" provision above quoted; and cannot be construed as in any way affecting the provisions prescribing the perils insured against. This was the holding of the Galveston court in Fidelity P. F. I. Co. v. Oldsmobile S. Co., 261 S. W. 492, in which we fully concur. While it may be noted in passing that the court set aside its judgment on rehearing, this was the result of a change of view regarding the perils coverage clause (essentially different from that at bar) and not upon the construction of the rider.

The oral negotiations between Higgenbotham and Ray, from the former's viewpoint are contained in the following excerpts from his testimony: "I took out that policy on a car that I was using at that time in my business, a service car. Mr. S. M. Ray, Jr., as representative of the American Indemnity Company, sold me that policy. After purchasing the policy, I was notified by Mr. Ray, who had been notified by the company, that for such an automobile the premium would be Two Dollars per hundred extra. * * * I made it clear to Mr. Ray just what policy I wanted. I made it so clear that he notified me that the first policy would not cover the automobile. Later, he told me that Eight Dollars more would cover what I wanted. I told Mr. Ray that I wanted to rent out my car driverless and that I wanted an insurance policy to cover it. When I paid him Eighteen Dollars and Thirty-seven Cents he told me that my car was covered by insurance from theft when I drove it myself and when it was driverless."

The rate stated in the body of the policy was 95 cents per $100; which was the rate prescribed by the insurance commission for the risk covered by the policy as originally written. The $2 per $100 added under the rider was the. rate prescribed by the commission "for all public automobiles not operated and controlled by the assured or by a person regularly employed by him as chauffeur * * * when fraudulent concealment or disposal by rentee or lessee is not covered." But, "where fraudulent concealment or disposal by rentee or lessee is covered, charge the private passenger or commercial rate applicable to the type of automobile insured plus an additional premium at the rate of $8.00 per $100.00 of insurance."

It is not claimed that there was any fraud on the part of Ray. The evidence affirmatively precludes the existence of fraud. The most that can be said of it is that, if Ray understood Higgenbotham as desiring a policy covering theft or conversion by lessee, and that Ray represented the policy with the rider attached, as such a policy, this was merely Ray's opinion as to the legal effect of the policy. Higgenbotham testified that he read the policy, and the rider, and relied upon the representations of Ray as to its interpretation. Quoting further from his testimony: "I am twenty-five years old. I am a graduate of high school. I do not go to college or take a business course. I have been in business two to four years. I can read and write and understand the English language. That part of the policy that was just read to me, I understood that to a certain extent. There is nothing particular difficult in the language of it."

The jury found that, on the date the rider was attached, there was an agreement between Ray and Higgenbotham "that said policy would insure plaintiff against loss by theft by bailee in case the car was rented out by the owner, or his agent, under a contract of hire by which said person should drive the car himself."

The policy contained the following provision: "This policy is made and accepted subject to the provisions, exclusions, conditions and warranties set forth herein or endorsed hereon, and upon acceptance of this policy the Assured agrees that its terms embody all agreements then existing between himself and the Company or of any of its agents relating to the insurance described herein and no officer, agent or other representative of this Company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the Assured unless so written or attached."

■ The following excerpts from U. S. Casualty Co. v. Medcalf (Tex. Civ. App.) 272 S. W. 539, 541, which as to its facts is on all fours with the case at bar, embody the principles which control our decision:

"The exceptions being expressed in plain and unmistakable language, and submitted to appellees' inspection and consideration, and adopted by them, they cannot avoid them by saying the agent of the insurer orally construed them out of the contract. First Nat. Bank v. Ins. Co., 62 Tex. 461; Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087; Assurance Co. v. Miller, 91 Tex. 414, 44 S. W.

60, 39 L. R. A. 545, 66 Am. St. Rep. 901; Insurance Co. v. Mize (Tex. Civ. App.) 34 S. W. 670; Reagan v. Bruff, 49 Tex. Civ. App. 226, 108 S. W. 185; Clack v. Wood, 14 Tex. Civ. App. 400, 37 S. W. 188.

"And finally, the policy contained a provision, which is obviously reasonable and essential to the integrity of all contracts of like nature, that 'no erasure or change appearing upon the face of this policy as originally printed, and no change or waiver of any of its terms or conditions or statements, shall be valid unless indorsed hereon and signed by an executive officer of the company.' We think, aside from all that has been said above, that this stipulation ought to be held to preclude any modification, omission, or enlargement of the terms of the policy as written, and as examined and accepted by appellees, unless made in the manner stipulated in the face of the policy. Bank v. Insurance Co., supra; Insurance Co. v. Kempner, 87 Tex. 229, 27 S. W. 122, 47 Am. St. Rep. 99; Insurance Co. v. Mize, supra; Roberts v. Ins. Co., 13 Tex. Civ. App. 64, 35 S. W. 955."

The trial court's judgment is reversed, and judgment is here rendered for appellant.