FEDERAL LIFE INSURANCE COMPANY V. J. W. RALEY.

No. 6947.   Decided November 10, 1937.
Rehearing overruled December 22, 1937.
(109 S. W., 2d Series, 972.)

*Alfred M. Scott,* of Austin, for plaintiff in error.

The evidence, as a matter to law, failed to raise a fact question for the jury to pass upon as to the existence or fulfillment of the essential elements of the policy definition of the term "wrecking," therefore judgment should have been rendered for the insurance company. Mochel v. Iowa State Trav. Men's Assn.,

203 Iowa 623, 213 N. W. 259, 51 A. L. R. 1327; National Casualty Co. v. Bogart, 125 O. St. 291, 181 N. E. 134.

*R. P. Moreland,* of Plains, and *R. L. Graves,* of Brownfield, for defendant in error.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This is a suit by the defendant in error, J. W. Raley, against the plaintiff in error, Federal Life Insurance Company, on an accident insurance policy, on account of the fatal injury of the defendant in error's wife, Mrs. Vera Raley. The injury and ensuing death of Mrs. Raley is alleged to have resulted from the wrecking of an automobile in which she and her husband were riding. A trial of the case before a jury resulted in a judgment for Raley. The Court of Civil Appeals affirmed the judgment. 81 S. W. (2d) 220.

The material provisions of the policy read as follows:

"The Federal Life Insurance Company * * * hereby insures Vera Raley * * * against accidental death * * * resulting, directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means, for the amounts and in the manner set forth in Parts * * * II, III * * * subject to the provisions, conditions and limitations contained in this policy. * * * *Part II. Automobile Accidents.* (a) for loss of both hands or both feet, sight of both eyes or one hand and one foot, sight of one eye and the loss of one foot, sustained by the wrecking of a four-wheeled automobile of the pleasure type exclusively, in which the insured is riding. * * * (b) for loss of life as a result of accident specified in paragraph (a) of this Part, the Company will pay the sum of * * * $1500."

Another paragraph of said policy reads, so far as presently material, as follows: " 'Wrecking' * * * as used in this policy means damage to car or conveyance, occurring at the time of injury or death, which damage shall require repair, and of which damage there shall be visible mark upon such car or conveyance."

The accident and attending circumstances are disclosed by the undisputed testimony of Raley. The material facts thus disclosed are substantially as follows: Mr. and Mrs. Raley lived about 2½ or 3 miles north of the town of Plains, in Yoakum County. The automobile in which Raley and his wife were riding at the time of the accident was a Ford roadster, having a

collapsible top with a small window at the back, and a luggage compartment in the rear end of the car. Prior to the accident, but on the same day, Mr. Raley bought a pig from a farmer about 2 or 3 miles east of Plains. The pig was put in the luggage compartment of said car. This compartment had a lid which opened at the rear end of the car, and there was a latch there, operated by a metal handle, for the fastening of the lid when same was closed. The upper end of the lid—that is to say, the end just behind the passenger compartment,—was hinged to the body of the car. This hinging device consisted of a metal screw at the upper left hand corner of the lid and a knob and socket at the upper right hand corner. These hinging parts were in proper place and properly functioning when the pig was loaded. Having put the pig in the luggage compartment, Mr. Raley closed the lid and fastened it with the latch and tied the handle of the latch so the lid could not become unlatched. He also tied a rope diagonally across the lid from the upper left hand corner to the lower right hand corner. Having done this, he began the journey to his home in the car. While going through Plains, on his way home, Mrs. Raley got into the car with him and they traveled northward along the public road running north from the town. A short distance out of town a double curve occurs in the road. The road first curves westward a short distance and then curves back north. It was at this second curve that the accident in question happened. The road is on an embankment about 36 feet wide, and at said second curve the road slopes down from the west side to the east side. Mr. Raley was driving the car and sat in the left side of the passenger compartment, and Mrs. Raley sat beside him on the right. At the time the accident in question occurred, the right side of the car, on account of the slope of the road, which has been mentioned, was about four or five inches lower than the left side. The car, as it entered upon the second curve, was moving, on the right hand side of the road, at a speed of about 12 or 15 miles an hour. At this time, Mr. Raley heard a noise in the rear end of the car which caused him to think that the pig might be about to escape. He glanced back through the back window in the car top, and saw that the upper left corner of the luggage compartment lid had come loose and fallen from place, and that the lid was askew in such a way as to open the lid about five inches at a lower corner of the luggage compartment. He also saw the snout of the pig sticking out through this opening. On seeing these things, he instantly turned his face back in the direction the car was moving, and discovered that in looking back he had inadvertently allowed the car to swerve to the left

side of the road. He immediately swerved the car back to the right side of the road, and at the same time pressed down on the brake pedal for the purpose of stopping the car and going back to prevent the pig from escaping. Just after Raley turned his face forward, after glancing back as stated, and while he was swerving the car, he heard a gasp and a clicking sound at the right hand door of the car, and immediately afterwards heard a thud on the ground beside the car. The car was then moving at the speed of 4 or 5 miles an hour. He instantly became aware of the fact that his wife was not in the car, and he pressed down hard on the brakes and brought the car to a stop as quickly as possible. He then sprang from the car, and saw Mrs. Raley lying flat of her back in the road, about 12 or 15 feet behind the car. He ran to her and found that her head was injured and that she was unconscious. However, in a short time she revived sufficiently to get back into the car, with his aid, but never did recover sufficiently to tell how she happened to fall. As the result of her fall, she died that night from concussion of the brain. Mr. Raley did not know how she came to be out of the car. Nothing was said by either of them at any time during the happening of the series of events involved in the accident. Just after the accident occurred and Mrs. Raley had gotten back in the car, Mr. Raley discovered that the screw of the hinging device at the upper left corner of the luggage compartment lid had become unscrewed and fallen to the bottom of the compartment, thus allowing that corner of the lid to come loose, and the lid to become askew as it did.

The insurance company contends that there is no evidence of a "wrecking" of the car, within the meaning of the term as defined in the policy. We find it unnecessary to decide and do not decide this question; but for present purposes we shall assume that the upper end of the luggage compartment lid coming loose, as it did, and the ensuing disarrangement of the lid, constituted a "wrecking" within the meaning of the policy. Having made this assumption, we pass to the contention of the company that there is no evidence to show that such "wrecking" proximately caused Mrs. Raley to be injured. In this connection, it is observed that in cases where the insurance policy does not in express terms so provide, the authorities generally, including courts of this State, do not regard that the insurer becomes liable for a loss unless the loss is proximately caused by the peril insured against, which in this case was the "wrecking" of the car. Moreover, it is to be gathered from the many decisions dealing with the subject that the term "proximate cause" as applied in insurance cases has essentially the same meaning as

that applied by our own courts in negligence cases, except that in the former the element of foreseeableness or anticipation of the injury as a probable result of the peril insured against is not required. 6 Couch on Insurance, Sections 1463-1476; 1 C. J. 470; Federal Life Ins. Co. v. White, 23 S. W. (2d) 832; Provident Life & Acc. Ins. Co. v. Holt, 27 S. W. (2d) 556; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Berry v. United Commercial Travellers, 172 Iowa 429, 154 N. W. 598; 24 Tex. Jur., pp. 1084 et seq. In a word, where a chain of events is set in motion by the peril insured against, and same is broken by a new and independent cause intervening between the peril insured against and the injury, but for which the injury would not have occurred, then in such case the peril insured against is regarded as the remote and not the proximate cause of the injury. With these observations in mind, we now take up the evidence relating to the cause of the injury suffered by Mrs. Raley which resulted in death. This evidence, the substance of which has been stated in detail, leaves no room to doubt that the "wrecking" of the car which occurred, operating either alone or in conjunction with any other force, did not proximately cause Mrs. Raley to fall to the ground, as she did, and be injured. There is no pretense that the unfastened and disarranged condition of the luggage compartment lid, of itself or operating in conjunction with any other force, not even with the actions of the pig, affected in any degree the movements of the car, or otherwise produced a condition of danger with respect to the occupants of the car. If Mrs. Raley had remained in the car, she would not have been injured at all. With reference to the essential cause of her falling to the ground as she did, the evidence, at most, admits of one or the other of two deductions, namely, that she was thrown from the car by its swerving motions, or that something else, which had no direct connection with the impaired condition of the lid, caused her to fall while she was voluntarily getting out of the car. In either case, the impaired condition of the luggage compartment lid could be no more than a remote cause of her fall to the ground. In either case, her fall would be the result of a new and independent cause intervening between the "wrecking" of the car and the injury, and but for which the injury would not have occurred.

Because the evidence does not show that the "wrecking" in question proximately caused the injury and death of Mrs. Raley, the judgment of the trial court and that of the Court of Civil Appeals are reversed, and inasmuch as there is no reasonable probability that the evidence in this respect will not be materi-

ally the same at another trial, judgment is here rendered for the plaintiff in error.

Opinion adopted by the Supreme Court November 10, 1937.

Rehearing overruled December 22, 1937.