A. L. HALL ET AL V. GREAT NATIONAL LLOYDS

No. A-4653. Decided February 2, 1955.
Rehearing overruled March 2, 1955.
(275 S.W. 2d Series 88)

*Johnson & Johnson, Freeman & Ward, McDonald, Sanders, Nichols, Ludlum, Wynn & Ginsburg* and *Atwood McDonald,* all of Fort Worth, for petitioner.

The Court of Civil Appeals erred in holding as a matter of law that the loss of petitioner Hall's truck and trailer was not a theft, but was an embezzlement. Mannen v. State, 109 Texas Crim. Rep. 74, 3 S.W. 2d 443; Leach v. State, 46 Texas Crim Rep. 507, 81 S.W. 733; McGraw v. State, 142 Texas Crim. Rep. 432, 154 S.W. 2d 645.

*M. Hendricks Brown* and *Chas. J. Murray,* both of Fort Worth, for respondent.

In reply to petitioners' points, cited Automobile Underwriters Co. v. Rhinehold, 255 S.W. 1116; Bomar v. Insurors Indem. & Ins. Co., 242 S.W. 2d 160; American Indm. Co. v. Higgenbotham, 52 S.W. 2d 653.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Petitioner, Hall, owned a truck and trailer encumbered with a valid lien in favor of petitioner, North Ft. Worth State Bank. He procured the issuance by respondent of an insurance policy on the truck and trailer, with loss payable to the Bank as its interest might appear. Hall employed one Flowers to go with him to San Antonio, Texas, and drive the truck and trailer to Ft. Worth. Hall had the trailer loaded with onions and left it where it was loaded with the key in the ignition lock. Hall then awakened Flowers, who was asleep in the car in which the two men had driven from Ft. Worth to San Antonio, and gave Flowers $100.00 to pay for the expenses of the trip and Flowers' compensation; told Flowers the whereabouts of the loaded truck, and instructed him to drive this truck to a designated place in Ft. Worth where Hall was to receive the truck and its cargo. Flowers went to a cafe nearby for his lunch, and Hall left in his car for Uvalde. Hall has never seen Flowers, the truck or trailer, or its cargo again.

Hall filed suit in a district court in Ft. Worth on the insurance policy to recover the value of the truck and trailer, and upon a favorable jury verdict recovered judgment for $7,000, subject to the rights of the Bank, who had intervened

in the suit asking that its lien be paid out of the proceeds from the judgment. Upon appeal, this judgment was reversed and remanded by the Court of Civil Appeals, 265 S.W. 2d 875, upon the ground that Flowers' offense was not theft, but was embezzlement, and therefore not covered by the terms of the policy. Petitioners complain of such holding. The Court of Civil Appeals sets out the pertinent provisions of the policy and the material facts in its opinion, and we shall summarize them herein.

A reference to the policy shows that the only coverages for which premium was paid were E, F, and G. E and F are collision and fire respectively and only G applies to this case. There was no premium paid for comprehensive coverage D. Under coverage G the Company bound itself "to pay for loss of our damage to the automobile, hereinafter called loss, caused by theft, larceny, robbery or pilferage * * *." Under the "Exclusions" contained in the policy is " (m) under coverage D, and G, to loss due to conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance." The jury found the truck and trailer were lost by theft, and that the theft was committed by Flowers, who was an employee of Hall.

■ In construing the terms of the policy, we shall determine the everyday meaning of the words and in "common parlance" and "the usual and popular understanding of the terms" used. U. S. Ins. Co. v. Boyer, 153 Texas 415, 269 S.W. 2d 340, 341; Security Ins. Co. v. Sellers-Sammons-Signor Motor Co., 1921, Texas Civ. App., 235 S.W. 617, refused. If the terms of the contract are susceptible of more than one meaning they will be construed strictly against the insurer. 24 Texas Jur. 705, *Insurance*, Sec. 29. This policy contains no provision distinguishing between the different forms of theft, as defined by our Penal Code, and we shall not indulge in the technical distinctions between these different forms of theft. Those distinctions are for the protection of the rights of the individual and his freedom from punishment and incarceration. Here the parties have entered into a contract defining their respective rights and liabilities, and we will construe such contract in consonance with the legal rules of construction applicable to contracts.

In defining "theft" the trial court had three paragraphs in its charge. The respondent objected only to the third paragraph of such charge, reading as follows:

"You are further instructed in connection with the definition

of theft as used in this charge that the temporary possession of an employee of an item of personal property belonging to his employer is not the possession as referred to in this charge when speaking of theft, but is mere custody, and is not such legal possession as will keep a wrongful taking by an employee of property belonging to his employer from being theft, should the employee fraudulently appropriate the employer's property involved, and where all of the other elements of the definition of theft are present."

This is the real issue in the case. If the possession by Flowers was such that the offense was embezzlement under Art. 1534, Vernon's Texas Penal Code, then it must follow that the loss was not covered by the "theft" provision of the policy. Also, it would follow that that part of the court's charge above set out was error, and the objection of respondent thereto should have been sustained.

■ We find in the decisions of the Court of Criminal Appeals a distinction between "custody" and "possession" in regard to the offense of theft. This rule is a well recognized one, and is thus stated in that well known and generally accepted authority —Branch's Annotated Penal Code, as follows:

"Sec. 2473—*Theft by Clerk or Servant.* If property is put in the custody of a servant by the master, his possession is not adverse to that of his master, and if, without the consent of the master and with the intent to deprive the master of the value of the property the servant fraudulently converts it to his own use, he is guilty of theft. Cobletz v. State, 36 Texas 353; Livingston v. State, 38 Texas Criminal Rep. 535, 43 S.W. 1008; Crook v. State,, 39 Texas Criminal Rep. 252, 45 S.W. 720; Zysman v. State, 42 Texas Criminal Rep. 432, 60 S.W. 669."

To the same effect is McGraw v. State, 142 Texas Cr. Rep. 432, 154 S.W. 2d 645; Roeder v. State, 39 Texas Cr. Rep. 199, 45 S.W. 570; Moore v. State, 88 Texas Cr. Rep. 154, 225 S.W. 261; Alvarez v. State, 109 Texas Cr. Rep. 62, 2 S.W. 2d 849; Bonatz v. State, 85 Texas Cr. Rep. 292, 212 S.W. 494; 32 Am. Jur. 958, *Larceny,* Sec. 56; *Id.,* p. 961, Sec. 57.

In the case of Stein v. State, 132 Texas Cr. Rep., 530, 104 S.W. 2d 508, 510, Stein was convicted of the offense of felony theft by bailee of shelled pecans received from one Coley to be cleaned by Stein for a consideration and then returned to Coley. Upon appeal Stein contended that if guilty of any offense he

was guilty of embezzlement and not theft, as charged. The court held the offense was not embezzlement and affirmed the conviction. It was appellant's contention that the bailment in question was for the exclusive benefit of the bailor, and therefore must be embezzlement, as defined by statute and as construed in cited cases. The court held that if the contract was for the benefit of both bailor and bailee, it was not embezzlement, but, if any offense, must be theft by bailee, and said: "In the present case, the bailment was for the benefit of the bailee to the extent that for compensation he was to perform work and labor on the property deliverd to him. Under the circumstances, we are of opinion that the bailment was for the mutual benefit of the bailor and bailee, and that, therefore, it was comprehended by the statute denouncing theft by bailee." For further discussion of the distinction between embezzlement and theft, see the exhaustive discussion in 146 A.L.R., pp. 532-596.

■ We hold that there is evidence to sustain the jury finding that the truck was lost through theft and therefore was covered by the policy issued by respondent.

We agree with the Court of Civil Appeals' holding that exclusions (m) and (o) do not constitute a defense to recovery by the petitioners.

■ Possession of the property, such as Flowers had, has been held to be mere "custody" under the theft statute, and not "possession" adverse to the owner, as defined in the statute. For the trial court to give the third paragraph of the charge defining "theft" was not error.

Respondent relies upon a number of authorities in states other than ours to sustain its position. We do not find that these authorities are in accord with the holding of our Texas courts.

Respondent also relies upon the following cases by the Courts of Civil Appeals—each of which show "no writ history." These cases are as follows: Home Ins. Co. New York v. Brewton, 46 S.W. 359; American Indemnity Co. v. Higgenbotham, 52 S.W. 2d 653 and Harkins v. Indiana Lumbermens Mut. Ins. Co. of Indianapolis, 234 S.W. 2d 430. The policy in each of these cases contained a provision which "limits the peril insured against to that form of theft in which possession is obtained without the consent of the owner or the person holding for him, regardless of the method by which such consent is obtained or of the intention of the taker. It expressly excludes any other form of

theft and all other analogous offenses." American Indemnity Co. v. Higgenbotham, supra. We find no such limiting provision within the policy in our case.

Looking to the brief of respondent in the Court of Civil Appeals, we find an assignment of error to the action of the trial court in refusing respondent's motion for new trial because of newly discovered evidence. The Court of Civil Appeals not having passed upon this assignment it becomes our duty to do so. Driver v. Worth Construction Company, 154 Texas 66, 273 S.W. 2d 603. In matters of this kind we can only reverse the judgment of the trial court in the event he has abused his discretion. We have examined the record and, under the facts of this case, we cannot say the action of the trial court in overruling such motion for new trial was an abuse of his discretion. Therefore, we are bound to affirm the trial court's action in this regard. See 31 Texas Jur. 90, et seq., *New Trial-Civil Cases*, Secs. 81 and 82, and authorities cited therein.

We find no error in the judgment of the trial court. Therefore, the judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is in all things affirmed.

Opinion delivered February 2, 1955.

Associate Justice Walker not sitting.

Rehearing overruled March 2, 1955.