LOUIS LIPSHULTZ AND ANOTHER, d.b.a. FOODTOWN SUPERMARKET, v. GENERAL INSURANCE COMPANY OF AMERICA AND OTHERS.

96 N. W. (2d) 880.

May 29, 1959—No. 37,699.

*Carroll, Thorson, Anderson & Cronan* and *George S. Roth,* for appellants.

*I. E. Krawetz,* for respondents.

NELSON, JUSTICE.

Prior to July 20, 1951, each defendant herein had issued a separate policy of insurance, substantially in the same form, insuring plaintiffs' stock in trade against direct loss by windstorm. The liability of each company was limited to the face amount of its policy, and each policy was in force at the time the loss and damage by windstorm here involved occurred. The General Insurance Company of America issued its policy in the amount of $14,000 and the other companies each in the amount of $10,000.

The following facts have been agreed to by stipulation of the parties:

"2. Prior to July 20, 1951, each defendant had issued to plaintiffs a separate policy of insurance, each of which was substantially in the same form, insuring the plaintiffs, among other things, against direct loss by windstorm to the contents of the premises occupied by the plaintiffs in the building located at 1546 Como Avenue, Saint Paul, Minnesota. The liability of each company was limited to the face amount of its policy, and each policy was in force on July 20, 1951. * * *

\* \* \* \* \*

"4. At the time of the issuance of said policies of insurance and at the time of the happening of the loss and damage hereinafter mentioned, plaintiffs were the owners of certain merchandise and stock in trade contained and located in the premises at 1546 Como Avenue, Saint Paul, Minnesota. The merchandise and stock in trade consisted of both perishable and non-perishable foodstuffs including meats, fish, fruits, vegetables and dairy products. The perishable foodstuffs were refrigerated. The refrigeration equipment was powered by electricity furnished by Northern States Power Company.

"5. On the evening of July 20, 1951, a strong windstorm, accom-

panied by rain, struck the St. Paul area and caused considerable damage to the property throughout the city and disrupted the electric power supply to many sections of the city. The wind caused a break in the 13.8 kilovolt supply lines supplying the power company's Snelling substation located about one-half mile from the plaintiffs' store. The 4 kilovolt distribution lines serving the area in which the plaintiffs' store is located were also taken out of service by the storm. The power lines leading from the plaintiffs' store building to the power pole in the rear of the building were intact. The electrical lines and apparatus inside the building were intact.

"6. The breaks in the power lines resulted in complete interruption of the electric power supply to the insured premises from 9:18 o'clock P. M. on July 20, 1951, until at least 8:05 A. M. on July 22, 1951. The resulting interruption of power supplied to the refrigerating equipment on the insured premises caused spoilage and shrinkage of the insured stock in the amount of One Thousand Eighty and 02/100 Dollars ($1,080.02). Plaintiffs took all possible steps to minimize their loss.

"7. Plaintiffs have performed all conditions precedent on their part to be kept and performed, have given the defendants due notice of loss and have submitted to defendants proofs of loss as required by the policies.

"8. If the loss sustained by the plaintiffs came within the benefits or coverages extended by the policies described in the complaint, then plaintiffs' loss was One Thousand Eighty and 02/100 Dollars ($1,080.02), and plaintiffs would be entitled to judgment against the defendants in the sum of One Thousand Eighty and 02/100 Dollars ($1,080.02), with interest at the rate of six per cent (6%) per annum from July 20, 1951, and their costs and disbursements herein, of which defendant General Insurance Company of America would be liable for 14/44ths, defendant Industrial Insurance Company would be liable for 10/44ths, defendant Underwriters Insurance Company would be liable for 10/44 and defendant Premier Insurance Company would be liable for 10/44ths."

The perils covered by the insurance policies read "FIRE & EXTENDED COVERAGE." The extended coverage endorsement (perils of windstorm,

hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, except as thereinafter provided) reads in part as follows:

"In consideration of $ incl. premium, and subject to provisions and stipulations (hereinafter referred to as 'provisions') herein and in the policy to which this endorsement is attached, including riders and endorsements thereon, the coverage of this policy is extended to include direct loss by WINDSTORM, HAIL, EXPLOSION, RIOT, RIOT ATTENDING A STRIKE, CIVIL COMMOTION, AIRCRAFT, VEHICLES, AND SMOKE."

The district court granted plaintiffs' motion for summary judgment. Judgments were entered pursuant thereto from which this appeal was. taken.

The insuring agreement insures the plaintiffs against *direct* loss by windstorm to the contents of the store occupied by the plaintiffs at the time in question. The sole question is whether the loss described in the stipulation of facts constitutes a direct loss by windstorm. The court below in granting summary judgment answered that question in the affirmative.

The contracts of insurance here involved do not appear to define the phrase "direct loss." Plaintiffs contend that under the facts presented there is a direct loss by windstorm as that term is used in the policies. They say that the entire community, including plaintiffs' premises, was subjected to a strong windstorm; that the wind knocked out the power company's Snelling substation, and took out of service the distribution lines serving the immediate area; and that the interruption of power to the refrigerating equipment caused the loss through spoilage and shrinkage of their insured stock. Plaintiffs cite the following cases as controlling: Ermentrout v. Girard F. & M. Ins. Co. 63 Minn. 305, 65 N. W. 635, 30 L. R. A. 346; Russell v. German Fire Ins. Co. 100 Minn. 528, 111 N. W. 400, 10 L.R.A. (N.S.) 326; Mork v. Eureka-Security F. & M. Ins. Co. 230 Minn. 382, 42 N. W. (2d) 33, 28 A. L. R. (2d) 987.

The Ermentrout case involved a fire loss. The insured building was located adjacent to another building in which the fire occurred. There

was a partition wall between them. No part of the insured building was actually ignited or consumed by fire. The adjoining building, however, fell as a result of the fire, tearing down with it the partition wall and a part of the insured premises. This court, speaking through Mr. Justice Mitchell, said (63 Minn. 308, 65 N. W. 636):

"* * * To render the fire the immediate or proximate cause of the loss or damage, it is not necessary that any part of the insured property actually ignited or was consumed by fire. This is so well settled that the citation of authorities in support of the proposition is unnecessary.

"The question is, was fire the efficient and proximate cause of the loss or damage? * * * The word 'direct,' in the policy, means merely 'immediate,' or 'proximate,' as distinguished from 'remote.' "

The court therefore held the loss to be a direct loss by fire despite the fact that there was no ignition on the insured premises. Plaintiffs strongly urge that the Ermentrout case is authority for their contention that the damage which they sustained was a direct loss by windstorm.

In the Russell case the building of the insured adjoined the building which was consumed by fire. Fire consumed the entire adjacent building but left standing intact a wall on the side closest to the insured building. A few days later, after the fire had been extinguished, a strong wind blew the wall over upon the insured building. This court held that the fire was the proximate cause of the damage. It said that it has been clearly settled by a long line of decisions that what is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring and efficient cause. It further held that it is not necessary under policies of the character involved in that case (fire policy) that the damage should be occasioned by direct contact with the fire since, to render the fire the immediate or proximate cause of the loss or damage, it is not necessary that any part of the insured property actually ignited or was consumed by fire. It was also pointed out that the inquiry must always be whether there was any intermediate cause disconnected from the primary fault, constituting a self-supporting cause, which produced the injury.

In the Mork case the court was concerned with a policy of insurance

on a dwelling which covered, among other things, direct loss or damage by explosion. While the house involved was unoccupied, an explosion of some sort took place in the oil-burning furnace, causing the door to blow open and the flame to be put out. The temperature was reduced in the house to the point that the water in the radiators froze causing considerable damage to radiators and plumbing. The question arose whether under the circumstances there was in fact a direct loss by explosion as those terms were used in the policy. This court held that there was a direct loss by explosion, citing the Ermentrout and Russell cases, and reaffirmed Mr. Justice Mitchell's definition in the Ermentrout case of the term "direct." In the Mork case defendants argued that the explosion was not the cause of the freezing of the water in the radiators. This argument was answered by the court pointing out that the fire did not cause the wind in the Russell case; that the parties there had contracted with reference to the possibility that gusty winds of the character which blew down the wall were liable to occur at any time; that such a contingency would be an element in the risk; and that therefore the loss was within the reasonable intent of the parties when the insurance contract was made.

Referring to cases in other jurisdictions, we find that in Godwin v. Atlantic Coast Line R. Co. 120 Ga. 747, 751, 48 S. E. 139, 141, the court in discussing legal causation said:

"* * * the phrase 'proximate cause' does not necessarily mean that which is nearest, but refers rather to the efficient cause, and in this sense is sometimes referred to as the 'immediate and direct' cause as opposed to 'remote.' And the words 'proximate,' 'immediate,' and 'direct' are frequently used as synonymous."

We think the reasoning in this case is in line with the views expressed in the Ermentrout case heretofore cited.

In Board of Commrs. of Port of New Orleans v. Norwich Union Fire Ins. Soc. (E. D. La.) 51 F. Supp. 245, 250, the court said:

"For the fire * * * to be held the direct and proximate cause of the loss or damage for which plaintiff seeks indemnification [fire and explosion policies], it is only necessary to find that such loss or damage followed reasonably from its occurrence, * * *."

And in Dixie Pine Products Co. v. Maryland Cas. Co. (5 Cir.) 133 F. (2d) 583, 585, it was held that the words "direct cause" as used in insurance policies are synonymous in legal intendment with "proximate cause."

In Queen Ins. Co. v. The Hudnut Co. 8 Ind. App. 22, 35 N. E. 397, the insurance company claimed that the plaintiff's loss was due not to a hurricane, against which loss the building was insured, but to high winds which forced a boat against the building. The court held that the fact that the hurricane itself, coming in contact with the building, did not alone cause the damage was not material; if it caused another body to come in contact with the building and do the damage, then the hurricane would be the direct controlling cause.

In Fidelity Phenix Fire Ins. Co. v. Anderson, 81 Ind. App. 124, 130 N. E. 419, the court allowed recovery under a windstorm policy and held that the wind was the proximate cause on the ground that if it construed the policy to mean that the company was liable only in the event of injury from direct impact of the wind it would practically nullify the policy as a protection to the insured.

It appears that in the policy in the case at bar the exclusionary clauses contain the following provision:

"This Company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail or (b) by water from sprinkler equipment or other piping, unless such equipment or piping be damaged as a direct result of wind or hail."

Defendants argue that it was intended to exclude consequential damage by reason of the express exclusion of losses due to conditions which naturally might be expected to follow in the wake of a windstorm and cite Williams v. Liberty Mutual Fire Ins. Co. 334 Mass. 499, 135 N. E.

(2d) 910, in support of their contention. That case involved the loss of a shutter due to a windstorm, permitting cold to enter and causing certain pipes to freeze. The reviewing court indicated that there was no ambiguity in the term "direct loss" as used in the policy, holding that it referred to the immediate physical damage resulting from the effect of the wind and that it was intended to exclude consequential damage as shown by the express exclusion of losses due to frost, cold weather, ice, snowstorm, sleet, waves, tidal wave, and high water or overflow, all being conditions which naturally might be expected to follow in the wake of a windstorm. The defense contends that we ought to consider the loss of the shutter there as comparable to electrical power in the instant case and insists that the damage which resulted herein following the loss of electrical power was a consequential or indirect loss. As we view it, the rationale of the Williams case is contrary to the holdings of this court in the Ermentrout, Russell, and Mork cases and is therefore not controlling in this jurisdiction.

In Jordan v. Iowa Mutual Tornado Ins. Co. 151 Iowa 73, 130 N. W. 177, the court considered a policy of insurance covering loss to livestock by windstorm which excluded loss from snow. The evidence indicates that a storm occurred in the month of January which involved both snow and high winds as the result of which the insured's cattle were injured and perished. The Iowa Supreme Court found that the loss was due to windstorm and said (151 Iowa 84, 130 N. W. 181):

"Appellant says, however, that the policy if so construed does not cover any loss or damage save that due directly to a windstorm such as a direct physical injury to the stock as by throwing them to the ground, driving them against some obstacle or the hurling of some object against them. As we view it, this is entirely too narrow a construction. It ignores a fundamental tenet for the construction of insurance policies to the effect that if a policy is so drawn as to require interpretation and be fairly susceptible of two different constructions, that one will be adopted which is most favorable to the insured. * * *

"Again, it is contended that the storm was not the proximate cause of the loss or damage; that the injury to the cattle was due directly, if not solely, to the conditions of the temperature. This was a question

of fact to be determined from the testimony, and without setting it out it is sufficient to say that the trial court was justified in finding that the loss would not have happened but for the windstorm, and that this windstorm was the efficient cause of the damage. That other irresponsible causes may also have contributed to the loss does not, of itself, relieve defendant from responsibility."[1]

We have carefully examined the cases submitted and analyzed in defendant's brief. We think they are distinguishable and not controlling. Some of the cases cited are clearly contrary to the weight of authority. Our Minnesota cases cited herein have refused to restrict coverage in situations in which the peril insured against set in motion a chain of events originating on the premises of the insured or on premises immediately adjoining. In the instant case the chain of events culminating in the loss to the contents in plaintiffs' store was set in motion by a windstorm which struck the area or community in which the insured property is located. It would hardly seem reasonable to say that a break such as occurred due to windstorm in the 13.8 kilovolt supply lines supplying the power company's Snelling substation located about ½ mile from plaintiffs' store and the failure of the 4 kilovolt distribution lines serving the area in which plaintiffs' store is located were not in the contemplation of the parties at the time the policies were issued. Similar results due to windstorms have occurred heretofore in many communities and constitute a hazard familiar to both insurer and insured. We are unable to find wherein the policies contain a limitation of coverage excluding this type of loss, one which the insurers might have inserted if deemed advisable by an appropriate exclusionary clause in the insurance contracts. It is not unreasonable to assume that such a peril was well within the contemplation of both insurer and

---

[1]For other cases on the issues of "direct" and "proximate cause," see Norwich Union Fire Ins. Soc. v. Board of Commrs. (5 Cir.) 141 F. (2d) 600; Princess Garment Co. v. Fireman's Fund Ins. Co. (6 Cir.) 115 F. (2d) 380; Gulf Portland Cement Co. v. Globe Ind. Co. (5 Cir.) 149 F. (2d) 196; Dixie Pine Products Co. v. Maryland Cas. Co. (5 Cir.) 133 F. (2d) 583; Woody v. South Carolina Power Co. 202 S. C. 73, 24 S. E. (2d) 121; McKeon v. Chicago, M. & St. P. Ry. Co. 94 Wis. 477, 69 N. W. 175, 35 L. R. A. 252, 59 A. S. R. 910; Tuff v. Warman, 5 C. B. N. S. 573.

insured when insuring the stock in trade consisting of many perishable foodstuffs requiring refrigeration. Adopting the contention of defendants would in our view, as was said by the Iowa court in the Jordan case, be "entirely too narrow a construction."

The manner in which the refrigeration equipment was powered by electric current furnished by the Northern States Power Company and the probability of interruption by windstorm was not beyond the common knowledge of both insurer and insured.

■ If under all the circumstances revealed by a stipulation of the facts the parties could have reasonably foreseen that a complete interruption in the supply and distribution lines furnishing the necessary electric power for refrigeration purposes might occur and cause damage to the contents in plaintiffs' store in the manner and to the extent stipulated, such contingency was an element in the risk covered by the insurance policies.

■ Since we have concluded from an examination of the policies issued that the word "direct" as used in said policies means merely "immediate" or "proximate," as distinguished from "remote," we are compelled to hold under the stipulation of facts, constituting the evidence in this case, that the cause of the damage was a question of fact and that the evidence clearly sustains the decision of the trial court.

■ It is our conclusion that the loss which the plaintiffs suffered following the windstorm comes within the fair meaning of the term "direct loss" in the policies and that the judgment appealed from must be affirmed.

Affirmed.