**FEDERAL INSURANCE COMPANY et al.,**
**Appellants,**

v.

**George F. BOCK et al., Appellees.**

**No. 51.**

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 10, 1964.

Rehearing Denied Oct. 8, 1964.

J. S. Covington, Jr., and Newton Gresham, of Fullbright, Crooker, Freeman,. Bates & Jaworski, Houston, for appellant..

Ross Meredith, of Webb, Webb & Meredith, Elgin, Allen McMurrey, of Maynard & McMurrey, Bastrop, for appellee.

GREEN, Chief Justice.

In a trial before the court on a written stipulation of facts, appellees, hereafter referred to as Bock, recovered judgment against appellants, hereafter called Federal, from which Federal appeals. We affirm.

At all times concerned, Bock was actively engaged in the business of processing and cold storage of meats at the Bock Building

in Galveston. For this purpose cold storage vaults refrigerated by electrically powered machinery were used, with the electricity furnished solely by Houston Lighting and Power Company. Prior to and on September 11, 1961, and thereafter, the refrigerating machinery and all of its electrical equipment were in good operating condition and capable of keeping all meats in the vaults from spoiling if supplied with the customary amount of electricity. On or about 3:00 p. m., Monday, September 11, 1961, the electrical transmission lines of Houston Lighting and Power Company from the mainland to Galveston were damaged, approximately five miles from Bock's building, by the winds of Hurricane Carla, resulting in a complete stoppage of electricity to the city of Galveston, and to Bock. Power was not restored to Bock until about 11:45 a. m., Thursday, September 14, 1961. The resulting lack of refrigeration caused the temperature in the cold storage vaults to rise, resulting in loss of from 10% to 15% of the meat, being an agreed money loss of $2,418.36. Hurricane Carla did no damage to the Bock Building or to any of its refrigerating or electrical equipment. It was stipulated that neither Bock nor any other person or corporation did any act or left undone any act which caused, aggravated or extended in any way the loss sustained by Bock. There was no dispute concerning the failure of Bock or of any other person or corporation to take the necessary precautions, in so far as they could possibly do so, to prevent the loss.

At the time of the loss, the *meat inventory* of Bock in the building was insured by Federal under policies which stated, in part, as follows:

"(Federal) does insure (Bock) against direct loss resulting from * * * windstorm, hurricane * * *".

In its decree granting Bock recovery, the trial court made the following express finding:

"That the term '* * * direct loss by windstorm and hurricane * *' as used in the insurance policies issued by the defendants in insuring the plaintiffs includes the losses suffered by the plaintiffs, same being losses occasioned by wind-caused interruption to power supply resulting in spoilage of coldstorage meats."

The issue we are called upon to decide is whether the trial court erred in his holding that the provision in the policies "direct loss resulting from * * * windstorm, hurricane" includes the loss sustained by Bock.

Both parties agree that they have found no Texas case interpreting the meaning of "direct loss" in an insurance policy where the peril insured against (the hurricane) (1) acts upon uninsured property (the transmission lines) (2) at a significant distance from the point of ultimate loss (five miles) (3) at a time significantly in advance of the actual loss (the winds died down in a few hours, but the power remained off for three days, causing the heat to rise gradually and spoil the meat) (4) but which peril is within the chain of events leading to the loss. We feel, however, that there are a number of Texas decisions which show the Texas trend to support the ruling made by the trial court under the the fact situation presented.

In Hall v. Great National Lloyds, 154 Tex. 200, 275 S.W.2d 88, the Supreme Court stated:

"In construing the terms of the policy, we shall determine the everyday meaning of the words and in 'common parlance' and '"the usual and popular understanding of the terms"' used. U. S. Ins. Co. v. Boyer, [153] Tex. [415], 269 S.W.2d 340, 341; Security Ins. Co. v. Sellers-Sammons-Signor Motor Co., 1921, Tex.Civ.App., 235 S. W. 617, refused. If the terms of the contract are susceptible of more than

one meaning they will be construed strictly against the insurer."

See, also, Trahan v. Southland Life Insurance Co., 155 Tex. 548, 289 S.W.2d 753.

 The courts recognize a distinction between the terms "loss" and "direct loss" as used in an insurance policy. Travelers Indemnity Company v. Jarrett, Tex.Civ. App., 369 S.W.2d 653, n. w. h. However, we have found no Texas authority which gives "direct loss" the restricted meaning as contended for by Federal, to-wit, "a loss by reason of the operation of the force of the designated peril upon the insured object." A proper definition of "direct loss" is "loss proximately caused by the peril insured against", and the term "proximate cause" as applied in insurance cases has essentially the same meaning as it does in negligence cases, except that in insurance cases, the element of foreseeableness or anticipation of the injury as the result of the peril insured against is not required. Reliance Insurance Co. v. Naman, 118 Tex. 21, 6 S.W.2d 743; Federal Life Ins. Co. v. Raley, 130 Tex. 408, 109 S.W.2d 972; Provident Life & Accident Ins. Co. v. Holt, Tex.Civ.App., 27 S.W.2d 556; Camden Fire Ins. Ass'n v. Moore, Tex.Civ.App., 206 S.W.2d 104, writ ref. n. r. e.; Farmers Insurance Exchange v. Wallace, Tex.Civ. App., 275 S.W.2d 864, writ ref. n. r. e. Thus, in a suit on a policy insuring for "direct loss" caused by the named peril, a proper definition of proximate cause would be "that cause which in a natural and continuous sequence unbroken by any new and intervening cause, produces a loss, and without which the loss would not have occurred." Provident Life & Accident Ins. Co. v. Holt, supra; 32 Tex.Jur.2d, Insurance, Sec. 365, pp. 562 et seq.

United States Insurance Company of Waco v. Boyer, 153 Tex. 415, 269 S.W.2d 340, was a suit upon the collision clause of a standard automobile policy. While the insured car was parked on a downtown street in Waco, a windstorm demolished a building, and the car was crushed under falling brick and timbers. *The car was not damaged by the winds blowing directly against it.* The car owner did not purchase windstorm insurance but did have collision insurance. The "windstorm provision" would pay "for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by windstorm * * *." The Supreme Court reversed a judgment for plaintiff and rendered for the insurer, saying: " * * * we hold that this loss falls within the windstorm provision of the policy and not within the collision provision." Since plaintiff was not covered by the windstorm provision, he did not recover.

In the course of the opinion, the court quotes with approval from an annotation in 23 A.L.R.2d, at page 405, as follows:

"The test applied under the rule of proximate cause seems to be that where, and only where, an insured peril sets other causes in motion which in unbroken sequence and connection produce the final result for which the insured seeks to recover under his policy, the peril insured against will be regarded as the direct and proximate cause of the entire loss, so as to render the insurer liable for the entire loss within the limits fixed by the policy. The rationale behind this rule is that the scope of insurance protection is defined by the application of the proximate cause standard, according to which a specified loss is compensable if and only if caused by a peril covered by the policy."

Federal, in citing the opinion in Travelers Indemnity Company v. Jarrett, supra, in support of its contention that Carla was a remote, rather than a direct or proximate, cause of Bock's loss, argues that "Although it does not interpret a policy covering 'direct loss', the case is important to this discussion since it demonstrates that the courts recognize a difference between the terms 'direct loss' and 'loss'. The case infers that if only

'direct loss' had been covered, the insured would not have recovered." We do not interpret the opinion as leaving such inference.

In that case, it was held that damage to an electric refrigerator caused by spoilage of food when electric power was cut off for 12 days due to damage to a transformer caused by lightning was covered by a policy insuring 'loss by lightning.' Appellant insurer contended that the lightning was a remote, and not a proximate, cause, and that the spoilage of the food, which insurer contended was expressly excluded by the terms of the policy, was the proximate cause of the damage to the refrigerator. In answering this argument, the court said:

> "Even if we apply insurer's criterion, however, we determine there was evidence of probative force that lightning was the dominant, efficient moving cause which set incidental, resulting, and consequential agencies in operation (though the latter may be nearer in point of time and space to the ultimate result) in a natural and continuous sequence. Foreseeability is not an element. Federal Life Ins. Co. v. Raley, 130 Tex. 408, 109 S.W.2d 972, [973], 974. The resulting condition of the food is not an intervening cause; it is merely an intervening link in the chain of causation."

Federal says that because the winds of Carla ceased to blow within a few hours after the power lines were damaged, prior to the time of the actual damage to the meat, this was not a direct loss caused by the hurricane. It is true that the spoilage of the meat was a gradual process, and was the result of the rise of temperature in the vaults over a period of three days, during which time the power was unavoidably off. It was stipulated that neither Bock, nor any other person or corporation, did any act or left undone any act to cause, aggravate, or extend the loss. Carla set off the series of events which, unbroken by any new or intervening cause, led directly to the spoilage of the meat. The sole source of electricity to the City of Galveston, and to Bock's cold storage vaults, were the transmission lines from the mainland. These were admittedly damaged by the winds of the hurricane five miles from Bock's building, causing loss of power to Bock's refrigerating vaults for over 68 hours, causing the temperature in said vaults to rise, which resulted in the spoilage of the meat. The insurance, for which Bock paid an annual premium of $492.50, expressly covered the contents of Bock's building, specifically reciting "*Occupancy, Meat & Cold Storage.*" The only way to protect the "Meats & Cold Storage" was by having a *continuous* flow of electrical power to the plant. The finding that the hurricane was the proximate cause of Bock's loss and not a remote cause is amply supported by the facts. We do not see how any other conclusion could properly have been reached.

We have carefully considered the cases submitted and analyzed in Federal's brief, such as Abady v. Hanover Fire Insurance Company, 4th Cir.1959, 266 F.2d 362, and Williams v. Liberty Mutual Fire Insurance Co., 1956, 334 Mass. 499, 135 N.E.2d 910, and feel that they are distinguishable on the facts and not controlling. In so far as statements contained in the opinions may support Federal's views, we believe they are contrary to the weight of authority and reason.

Lipshultz v. General Insurance Company of America, 1959, 256 Minn. 7, 96 N.W.2d 880, is parallel with the present case, and strongly supports our holding. There, the policy insured the contents of plaintiff's building against direct loss by windstorm. The case was tried on a stipulation of facts to the effect that a windstorm in the locale of plaintiff's building blew down power lines, putting an electric power supply station out of service, with the result that plaintiff's foodstuffs stored in the building were cut off from their electric refrigeration

for 35 hours and severely damaged. Stating that the sole question was whether the spoilage of the perishables constituted a direct loss by windstorm, the court applied the test of proximate cause, and said that the chain of events culminating in the loss was set in motion by the windstorm, and that it would hardly seem reasonable to say that a break in the power lines as the result of a windstorm was not in contemplation of the parties when insuring a stock of perishable foods requiring refrigeration. The court rejected the insurer's contention that the loss due to interference of electric power brought on by the windstorm was a mere consequential damage, and stated that to so hold would be entirely too narrow a construction of the policy, and that since it could be reasonably foreseen that an interruption of electric power due to windstorm would cause damage to the contents of the building, such contingency was an element in the risks covered by the policy, and constituted a direct loss by windstorm. The opinion goes even further than necessary under the Texas rule of proximate cause in insurance cases, since the element of foreseeability is not required.

The well-written opinion discusses the authorities pro and con on the issue raised, including Williams v. Liberty Mutual Fire Insurance Co., Mass., supra, and, we feel, arrives at the proper conclusion. We refer to the opinion for further study of other authorities on this subject.

■ Applying the test of proximate cause as above discussed and the rules of construction of insurance policies as laid down by our State Supreme Court in United States Insurance Company v. Boyer, supra, Hall v. Great National Lloyds, supra, and Trahan v. Southland Insurance Co., supra, to the facts as stipulated, we hold that the trial court did not commit error in concluding that the spoilage of the meat in Bock's vaults was a direct loss by windstorm and hurricane, and was included within the terms of the policies.

Judgment affirmed.