BERNARD A. WILLIAMS *vs.* LIBERTY MUTUAL FIRE INSURANCE COMPANY.

Suffolk. May 9, 1956. — July 26, 1956.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Insurance,* Windstorm insurance. *Equity Pleading and Practice,* Declaratory proceeding. *Words,* "Direct loss."

An insurance policy on a house providing that it covered "direct loss by windstorm," damage to the interior of the house by water, rain, snow, sand or dust entering it "through openings in the roof or walls made by direct action of wind," and damage by water from piping injured "as a direct result of wind," but that damage "caused directly or indirectly by . . . cold weather" was excluded, did not cover damage occurring when, several days after the shutter over a louver in a loft of the house had been blown off in a "windstorm," making the loft colder than it would have been with the shutter in place, a water pipe in the loft froze and burst because of cold weather then ensuing, but not because of wind blowing on it, and water ran through the house from the pipe. [503]

In a suit in equity presenting a proper case for declaratory relief under G.L. (Ter. Ed.) c. 231A, the bill should not be dismissed where the result on the merits is adverse to the plaintiff but a declaratory decree stating that result should be entered. [503]

BILL IN EQUITY, filed in the Superior Court on March 21, 1955.

The suit was heard by *Goldberg, J.*

*Alexander E. Finger,* (*Ernest L. Leffler & Richard L. Hull* with him,) for the plaintiff.

*Bertram A. Sugarman,* for the defendant.

WILLIAMS, J. This is a bill in equity for a binding declaration of the right of the plaintiff to recover under a policy of fire insurance issued by the defendant for damage to his property resulting from "windstorm." It is agreed that there is an actual controversy between the parties, that at the time of the alleged loss the policy was in effect, and that the plaintiff is the person insured thereunder. The policy provides for "extended" coverage to include "direct loss by windstorm, hail . . . ." Provisions, stated therein to be applicable only to windstorm and hail, are as follows: "This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail), snowstorm, sleet, waves, tidal wave, high water or overflow, whether driven by wind or not. This Company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by water, rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by water, rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail or (b) by water from sprinkler equipment or other piping, unless such equipment or piping be damaged as a direct result of wind or hail."

A judge of the Superior Court found the following material facts. The plaintiff owned a large single house of seventeen rooms on the ocean front in that part of Gloucester called Magnolia. Above the top or third floor and under a peaked roof was a so called loft reached by a ladder from

the third floor through a hatchway. In the loft a louver, a device designed for ventilation which consisted of a series of small horizontal boards or slats sloping out and down, permitted air but no rain to enter the loft. The house was open for occupancy the year around, but during the winter months was only visited occasionally by the plaintiff, who lived in Charlestown. During these months the house was heated by oil burning heaters and was periodically inspected by a nonresident caretaker. On December 14, 1953, there were winds, strong to gale with a velocity of thirty to forty miles per hour, and intermittent gusts somewhat stronger. The wind was accompanied by rain from 4:30 A.M. to 6 P.M. and the storm was over at 7 P.M. On that day the temperature varied from 49° to 32°. Temperatures on the following days were, December 15, 52° to 32°, December 16, 36° to 24°, December 17, 24° to 17°, December 18, 27° to 10°, December 19, 27° to 10°, and December 20, 45° to 27°. The plaintiff visited the house on December 16 and on leaving set the thermostats at 60°. He noticed nothing wrong nor did the caretaker when he visited it on the following day. On December 21 it was discovered that the shutter over the louver in the loft was missing. Water in a one inch pipe in the loft had frozen, the pipe had burst and the house was damaged by water from the pipes.

The judge found and ruled as follows. "I find that on December 14, 1953, there was a windstorm; that the windstorm ripped off the shutter which was screwed to the frame or casing of the louver on the west side of the house; that the loft was colder than it would have been if the shutter had not been ripped off; that the pipe froze some time between December 17 and December 21 because of the increased cold and not because of any wind blowing upon the pipe; that wind did not blow upon the pipe; that the pipe broke because it was frozen; and that water came down from the loft through the house because the pipe was broken and did considerable damage to the interior of the house. I find and rule that the pipe in the loft was not damaged as a direct result of wind. I rule that the damage

to the interior of the building was not a damage which the policy insured against and is not a damage which the Liberty Mutual Fire Insurance Company is liable for under the 'Windstorm' provisions of this policy. Let a decree be entered accordingly." In response to requests for findings and rulings by the plaintiff, he found that the damage to the house was a result of water flowing from a burst pipe elbow in the loft and that "the freezing of the pipe was not caused by wind blowing upon its surface" and made these additional rulings. "2. By the terms of the 'Provisions Applicable Only to Windstorm and Hail,' the broad exclusions from coverage are expressly qualified by the exceptions set forth relating to damages to the interior of a building. 3. That liability for damage to the interior of the building covered caused by water escaping from piping damaged as a direct result of wind is expressly assumed by the insurer. 4. That freezing of a pipe caused by wind blowing upon its surface, thereby causing the temperature in and around the pipe to go below the point to which it could have gone in the absence of any wind, is the result of direct action of wind"; and "that the winds on December 14, 1953, constituted a windstorm within the meaning of 'windstorm' in the policy." A final decree was entered dismissing the bill without costs and the plaintiff appealed.

The policy extends the coverage of loss by fire to "direct loss by windstorm, hail, explosion, riot . . . aircraft, vehicles and smoke," and the question for decision is what is "direct loss." It restricts the coverage of damage to the interior of the insured building from windstorm and hail to that caused by water, rain, snow, sand or dust entering the building through openings in the roof or walls made by the direct action of these forces and damage from water in pipes to that caused by damage to the pipes as a direct result of wind or hail. Loss caused directly or indirectly from cold weather is expressly excluded.

It appears from the findings that the windstorm had exhausted its force on the evening of December 14, that the rain had ceased at approximately the same time, and that

the immediate cause of the bursting of the pipe was the freezing weather which began on December 17 and lasted through December 19. The damage due to this cause was therefore not a direct result of the windstorm. See *Parish v. County Fire Ins. Co.* 134 Neb. 563, 568. We think that there is no ambiguity in the term "direct loss" as used in the policy. It refers to the immediate physical damage resulting from the effect of the wind, in this case the loss of the shutter. That it was intended to exclude consequential damage is shown by the express exclusion of losses due to frost, cold weather, ice, snowstorm, sleet, waves, tidal wave, and high water or overflow, all being conditions which naturally might be expected to follow in the wake of a windstorm.

There was no error in the rulings of the judge. We think, however, that the bill should not have been dismissed. The plaintiff seeks a declaration of right. The final decree is to be modified to conform with the ruling that the damage to the interior of the plaintiff's building was not a damage covered by the policy and is not a damage which the defendant is liable for under the windstorm provision of its policy.

*So ordered.*